# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MYERS, | 1:04 CV 05562 LJO YNP SMS (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| E. ALMEIDA, et. al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis. Plaintiff filed his Complaint on April 13, 2004. (Doc. 1.) The Court screened Plaintiff's Complaint and dismissed it with leave to amend. (Doc. 16.) Plaintiff did not amend within the required time such that a Findings and Recommendation issued for the action to be dismissed. (Doc. 17.) Subsequently, Plaintiff filed his First Amended Complaint and objections to the Findings and Recommendations. (Docs. 20, 21.) The Court vacated the Findings and Recommendations of dismissal. (Doc. 23.) On April 7, 2009, an order was entered, dismissing the First Amended Complaint for failure to state a claim for relief. The June 1, 2009, Second Amended Complaint is before the court

In the order dismissing the First Amended Complaint, the court noted the following summary. Plaintiff's First Amended Complaint is one hundred sixty three (163) pages of

1

documents from which it is practically impossible to ascertain what constitutional claims Plaintiff is attempting to state. Per the Court's docket, Plaintiff is currently a state prisoner at California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California – which is the same facility of incarceration listed for Plaintiff on his First Amended Complaint. On the amended complaint form, Plaintiff fails to make any attempt to state the facts of his claims, or the relief which he seeks. Rather, Plaintiff refers to an "attached complaint." (Doc. 20, pg. 3.) However, no complaint for constitutional violations under 42 U.S.C. § 1983 is attached. Plaintiff did attach a petition for writ of habeas corpus with memorandum of points and authorities, various inmate appeals and responses, work logs, medical records, and pharmacy records. If Plaintiff intended to challenge the legality or duration of his confinement, he is advised that a separate filing of a habeas corpus petition is the correct method for him to do so. Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991), *quoting*, Preiser v. Rodriguez, 411 U.S. 475, 485 (1973); Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases. However, if Plaintiff intends to pursue issues raised in the attached petition for writ of habeas corpus as constitutional violations under 42 U.S.C. § 1983, then he must reformat his claims and their factual basis to present them in the proper document form – i.e. as a complaint under § 1983, presenting his factual basis for all alleged constitutional violations without requiring that his allegations be gleaned from information stated in a habeas corpus petition. It appears from the Court's screening of the original Complaint, that Plaintiff might be intending to pursue claims for deliberate indifference to his serious medical needs. Plaintiff may be able to amend to correct deficiencies in his pleading so as to state cognizable claims. Thus, he is once again given the applicable standards and leave to file a second amended complaint. However, since these standards were previously provided to Plaintiff, and this is his last opportunity he will be given to state cognizable claims.

Plaintiff was specifically advised that "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Plaintiff was also advised that "The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

The court advised Plaintiff that if he chooses to file an amended complaint, and fails to comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the future.

Plaintiff was also advised of the requirement to link each individually named defendant with specific conduct. The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See

3

1  Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362
2  (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a
3  constitutional right, within the meaning of section 1983, if he does an affirmative act, participates
4  in another's affirmative acts or omits to perform an act which he is legally required to do that
5  causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th
6  Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named
7  defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's
8  federal rights.

9  In the order dismissing the original complaint, the court was able to identify claims that
10 Plaintiff attempted to articulate. Plaintiff set forth claims of supervisory liability and deliberate
11 indifference to serious medical needs.

12 Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the
13 prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate
14 indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Such a
15 claim has two elements: "the seriousness of the prisoner's medical need and the nature of the
16 defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991). A
17 medical need is serious "if the failure to treat the prisoner's condition could result in further
18 significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at
19 1059 (*quoting* Estelle, 429 U.S. at 104). Indications of a serious medical need include "the
20 presence of a medical condition that significantly affects an individual's daily activities." Id. at
21 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the
22 objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S.
23 825, 834 (1994).

24 If a prisoner establishes the existence of a serious medical need, he or she must then show
25 that prison officials responded to the serious medical need with deliberate indifference. Farmer,
26 511 U.S. at 834. Deliberate indifference can be manifested by prison guards intentionally
27 denying or delaying access to medical care or intentionally interfering with the treatment once
28 prescribed. Estelle, 429 U.S. at 104-05. "However, the officials' conduct must constitute ' "

1  'unnecessary and wanton infliction of pain' " ' before it violates the Eighth Amendment. <u>Hallett</u>
2  <u>v. Morgan</u> 296 F.3d 732, 745 (2002) quoting <u>Estelle</u>, 429 U.S. at 104, 97 S.Ct. 285 (quoting
3  <u>Gregg v. Georgia</u>, 428 U.S. 153, 173 (1976)); <u>see</u> also <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th
4  Cir.1998).

5        Supervisory personnel are generally not liable under section 1983 for the actions of their
6  employees under a theory of <u>respondeat superior</u> and, therefore, when a named defendant holds a
7  supervisory position, the causal link between him and the claimed constitutional violation must
8  be specifically alleged.  See <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v.</u>
9  <u>Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978), <u>cert. denied</u>, 442 U.S. 941 (1979).  To state a claim
10 for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some
11 facts that would support a claim that supervisory defendants either: personally participated in the
12 alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent
13 them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation
14 of constitutional rights' and is 'the moving force of the constitutional violation.'" <u>Hansen v.</u>
15 <u>Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); <u>Taylor v. List</u>, 880 F.2d
16 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be
17 alleged to support claims under section 1983.  See <u>Leatherman v. Tarrant County Narcotics Unit</u>,
18 507 U.S. 163, 168 (1993).    Plaintiff failed to state a claim for relief as to any of the claims set
19 forth in the first  amended complaint.

20       In the June 1, 2009, Second Amended Complaint, Plaintiff sets forth, in great detail, the
21 concerns he has with his medical treatment.  Throughout the Second Amended Complaint,
22 Plaintiff makes generalized allegations regarding medical staff in general.   Plaintiff is 62 years
23 old, and suffers from the effects of an industrial accident in 1994.  Plaintiff was not treated
24 properly, resulting in a fusion of his right ankle.  Plaintiff alleges that he suffers from"neurophy,"
25 and that his "foot swells, read badly, every day, and is extremely painful for all related papers."
26 Plaintiff details the history of his treatment, including hospitalization and seven surgeries.
27 Plaintiff also refers to urological and gastrointestinal problems.
28       Plaintiff refers to an administrative process to request modifications pursuant to the

Americans With Disabilities Act (ADA). Specifically, Plaintiff filed a Request for Reasonable Modification, CDC Form 1824. It appears that Plaintiff is challenging a decision to put him in a non-paid instead of a paid position. Plaintiff contends that if he is fully disabled, then he should "by rights be re-evaluated by appropriate medical specialist and mad A1A permanently medically unassigned." Plaintiff's grievance was denied on the ground that custody staff can not make a medical determination. Plaintiff was advised that a CDC Form 1824 is an inappropriate remedy for a custody classification issue.

Plaintiff also lists deficiencies regarding his medical care. Plaintiff sought renewal of certain medications in 2002, and appears to allege that there was an 8 wee delay in issuing the medication. Other than an Inmate Grievance, CDC Form 602 addressed to the Chief Medical Officer, Plaintiff fails to allege conduct on the party of any individual that deprived him of any medication that was properly prescribed. Plaintiff does refer to an unidentified Medical Technical Assistant (MTA). Plaintiff alleges that this individual would not allow Plaintiff to have aspirin. Plaintiff goes on to allege that he has difficulty in getting his medications renewed.

It appears that the Second Amended Complaint sets forth a claim of deliberate indifference to Plaintiff's serious medical needs, as well as a claim pursuant to the Americans With Disabilities Act, 42 U.S.C. § 12132.

As to Plaintiff's ADA claim, Title II of the ADA "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996). In order to state a claim of disability discrimination under Title II, Plaintiff must allege four elements: (1) that Plaintiff is an individual with a disability; (2) that Plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) that Plaintiff was either

excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of Plaintiff's disability. Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (citing Weinrecih v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).

Other circuits have held that medical treatment decisions cannot be the basis for ADA claims. See Burger v. Bloomberg, 418 F.3d 882 (8th Cir. 2005) (medical treatment decisions not basis for ADA claims); Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1144 (10th Cir. 2005) (medical decisions not ordinarily within the scope of the ADA); Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.")

Here, Plaintiff fails to state a claim for which relief can be granted under the ADA. The facts as alleged in the Second Amended Complaint indicate that Plaintiff challenged his placement in a non-paid work assignment by filing a CDC Form 1824. Plaintiff was advised that such a remedy is inappropriate for a custody classification. There are no allegations that Plaintiff was denied a service, program, or activity. Plaintiff was merely reassigned to a non-paying position.

Further, Title II prohibits discrimination by a "public entity." A public entity is defined to include any state or local government and any department, agency, or other instrumentality of a state or local government. 42 U.S.C. § 12131(a)(A) and (B). The remedial scheme of Title II excludes individuals from liability. Title II directs that its remedies, procedures and rights are those that are set forth in the Rehabilitation Act, 42 U.S.C. § 12133. The Rehabilitation Act, in turn, directs that the "remedies, procedures and rights" with regard to non-employment matters "set forth in Title VI . . . [42 U.S.C. § 2000d et seq.] shall be available . . . . "

Individuals are distinctly excluded from the definitions of programs and activities under Title VI. 42 U.S.C. § 2000d-4. As a result, individuals acting in their individual capacity are excluded from liability under Title II and are entitled to dismissal. Such a conclusion is consistent with interpretations of Title I of ADA, which adopts the rights, remedies and procedures set forth in Title VII. 42 U.S.C. § 12117.

As to Plaintiff's Eighth Amendment claim, the Second Amended Complaint suffers from the same defect as the First Amended Complaint. Plaintiff fails to charge any individual defendant with conduct that constitutes deliberate indifference as that term is defined above. In the order dismissing the First Amended Complaint, Plaintiff was specifically advised that the statute under which this action proceeds plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. Plaintiff has failed to do that here. Plaintiff was specifically advised of this deficiency in the order dismissing the first amended complaint, and has failed to correct the deficiency in the Second Amended Complaint. The Court recommends dismissal with prejudice for failure to state a federal claim upon which the court could grant relief. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987) (prisoner must be given notice of deficiencies and opportunity to amend prior to dismissing for failure to state a claim).

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed for failure to state a claim upon which relief can be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636 (b)(1)(B). Within twenty days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See

1  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file objections within the
2  specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951
3  F.2d 1153 (9th Cir. 1991).

8  IT IS SO ORDERED.

9  **Dated:     June 16, 2009**             /s/ Sandra M. Snyder
                                  UNITED STATES MAGISTRATE JUDGE